IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH M. KIRKS, | ) | CASE NO.  1:22-CV-01584-SL |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN DOUGLAS FENDER, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Kenneth Kirks ("Kirks" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Kirks is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Kirks*, Richland County Court of Common Pleas Case No. 2019-CR-0967N.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.    Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Kirks' conviction as follows:

{¶2} On February 11, 2020, the Richland County Grand Jury indicted appellant on sixteen counts of counterfeiting in violation of R.C. 2913.30(B)(4) and (C)(1), felonies of the third degree, and one count of forgery in violation of R.C. 2913.31(A)(3), a felony of the fifth degree. At his arraignment on March 3, 2020, appellant entered a plea of not guilty to the charges. A jury trial was scheduled for April 7, 2020. Pursuant to a Judgment Entry filed on March 24, 2020, the trial was continued on appellee's motion due to a public health emergency posed by COVD-19 and time was tolled for speedy trial purposes pursuant to R.C. 2945.72(H). The trial was continued to June 2, 2020.

{¶3} On June 1, 2020, appellant filed a motion to dismiss on statutory speedy trial grounds. The trial, via an Order filed on June 4, 2020, ordered that the jury trial be continued to a date at the court's convenience and that "[t]ime is tolled to the new trial date on defendant's motion." The trial court, as memorialized in Judgment Entry filed on July 2, 2020, denied the Motion to Dismiss. A jury trial was scheduled for July 21, 2020.

{¶4} On July 16, 2020, appellant filed a Motion for a Continuance. Pursuant to a Judgment Entry filed on July 16, 2020, the trial court granted the Motion for a Continuance. The trial was rescheduled to August 18, 2020 pursuant to a Judgment Entry filed on July 17, 2020. The trial court ordered that time was tolled for speedy trial purposes.

{¶5} A jury trial commenced on August 18, 2020. The following evidence was adduced at trial.

{¶6} On November 2, 2019, Josh Adamescu of the Mansfield Police Department was providing security for a haunted prison event at the Ohio State Reformatory. The event is a Halloween style carnival hall both inside and outside the Reformatory, which is closed. Officer Adamescu was providing off-duty security and was sitting in a bus that served as a ticket window. He was "watching the money so that nobody would take it essentially." Transcript at 193.

{¶7} At some point, Officer Adamescu was advised by staff members of the Reformatory that there was someone selling tickets to people outside the entry of the event. He was advised that there was an African-American male outside with a bunch of tickets in his hand. Officer Adamescu and his partner approached appellant, who fit the description of the scalper, and asked him what was going on. Appellant told Officer Adamescu that he was supposed to have a bunch of family members from Cleveland coming down to go through the haunted prison, but that they had all canceled so he was trying to sell the tickets to get his money back. Officer Adamescu advised appellant that he could not sell the tickets and appellant asked if he could still use the tickets to go into the Reformatory. A staff member told appellant that he could. Appellant then left and went inside the haunted prison.

2

{¶8} Detective Terry Butler of the Mansfield Police Department testified that he also was working extra duty detail at the Ohio State Reformatory and that he had some interaction with appellant. He indicated that on November 1, 2019, the previous day, appellant had been escorted off the property for trying to sell tickets. Appellant, at the time, said that one or two weeks prior, he had been given the tickets by an individual named Adrian Berry at a BP station and told to sell them or give them away. Detective Butler testified that one of the persons in charge of the haunted prison took some of the tickets to see if they were valid and discovered that they had been bought using credit cards from different people in different states. The tickets were collected.

{¶9} Detective Butler testified that when they checked appellant's identification, it was discovered that appellant was on parole. Appellant's parole officer, Kenny Kaufman, was then contacted. When Kaufman arrived, he spoke to appellant. Appellant's vehicle, which was in the parking lot, was searched and nineteen debit Visa cards were located in the vehicle. Seventeen of the cards bore no name or a name different from appellant's. One of the cards belonged to Jason Milton Miller of Euclid, Ohio and had been lost. Two of the cards were legitimate cards belonging to appellant. Also found in the vehicle were a driver's license and the learner's permit for appellant.

{¶10} Detective Sergeant Matthew Loughman of the Mansfield Police Department testified that he interacted with appellant on November 2, 2019. At the time, Sergeant Loughman was working a security detail at the haunted prison. Sergeant Loughman testified that after the tickets were collected, it was discovered that the name Adrian Berry was found on the tickets. Berry's name was run through a database of individuals who had purchased tickets. Berry had either made or attempted to make five separate purchases with five separate credit cards from five separate states, which "set out some red flags." Transcript at 265. One purchase was for almost $3,000.00 and another for almost $2,000.00. Two of the purchases were declined by the credit card company that issued the card. The tickets also bore the name of Jim Simfenderfer as the name on the credit card used to purchase tickets. Simfenderfer had reported his card stolen and reported to Sergeant Loughman that he did not give permission for someone to use the card to purchase tickets.

{¶11} Sergeant Loughman contacted Special Agent Nate McLaughlin with the Secret Service and asked for his assistance in the investigation. The Secret Service is highly involved in investigations of counterfeit money and credit cards. Sergeant McLaughlin used specialized card readers that showed that someone had wiped the numbers on the cards clean and had put new credit card numbers on the debit cards.

{¶12} Secret Service Special Agent Nate McLaughlin testified that sixteen of the cards "had different encoded information than what was shown on the front of the card." Transcript at 285. He testified that fifteen of the sixteen cards were

prepaid debit cards while the sixteenth was a Speedway gas station Cash Fuel card.

{¶13}  After discovering that the sixteen cards were counterfeit, Agent McLaughlin interviewed appellant at the jail. Appellant told him that he had purchased 35 Ohio Reformatory tickets and the sixteen cards from Adrian Berry for a total of $300.00. The face value of each ticket was $45.00. Appellant said that he had attempted to use the cards at several businesses and at a couple he was successful while at others he was declined. Appellant said that Berry always carried around a laptop with charging equipment and that Berry would regularly send appellant to go to a store and buy something. When appellant returned, Berry would have more altered plastic cards ready to be used. When Agent McLaughlin asked appellant if Berry was making the altered cards on his laptop, appellant said "Yeah, I think so." Transcript at 305. Agent McLaughlin testified that appellant never told him that Berry had left the cards in appellant's vehicle unbeknownst to appellant.

{¶14}  At trial, appellant testified that he had bought the tickets from Berry for $300.00. He testified that he had 30 to 35 of the tickets and that he tried to sell them for $20.00 each. According to appellant, he did not get anything else with the purchase of the tickets. Berry, appellant testified, told appellant that he could make $600.00 if he sold the tickets. Appellant claimed that Berry was with him on November 2, 2019 at the Reformatory and that Berry had left the counterfeit cards in appellant's vehicle. Appellant admitted to using one of the cards found in his vehicle at a restaurant on the day he was arrested. Appellant also testified that he told Special Agent Napier (sic) that Berry had left the cards in his vehicle.

{¶15}  Appellant admitted that he told Agent McLaughlin that he had tried to use the cards for food and claimed that Berry had left the cards in appellant's vehicle. He testified that he never sold any of the tickets although he tried to. Appellant admitted that the total value of the tickets that he had was over $1,000.00 and that he was trying to sell tickets that were paid for by Jim Simfenderfer. Appellant denied telling Sergeant McLaughlin that he had bought the counterfeit cards from Berry, but also said that he remembered telling Sergeant McLaughlin that he bought credit cards from Berry. Appellant claimed that despite repeatedly, during his interview by Agent McLaughlin, talking about receiving cards from Berry and the programming of those cards with counterfeit information, he was actually talking about the tickets for the haunted prison.

{¶16}  The jury convicted appellant on all counts. On August 24, 2020, appellant was sentenced to 36 months in prison on counts 1-8 and 12 months in prison on counts 9-17. Counts 1, 5, 9, 13 and 17 were ordered to run consecutively for an aggregate prison sentence of 9 years. Appellant was also fined $4,000.00.

4

{¶17} On August 26, 2020, appellant was resentenced. The trial court corrected the fine to be $500.00 on counts 1 through 16 for a total fine of $8,000.00.

*State v. Kirks*, 2021-Ohio-2027, 2021 WL 2456641, at **1-3 (Ohio Ct. App. June 16, 2021).

## II.    Procedural History

### A.    Trial Court Proceedings

On February 11, 2020, the Richland County Grand Jury indicted Kirks on the following charges: sixteen counts of counterfeiting in violation of Ohio Rev. Code § 2913.30(B)(4) and (C)(1) (Counts 1-16) and one count of forgery in violation of Ohio Rev. Code § 2913.31(A)(3) (Count 17).  (Doc. No. 5-1, Ex. 1.)  Kirks entered pleas of not guilty to all charges.  (Doc. No. 5-1, Ex. 2.)

On March 13, 2020, the State filed a motion to reduce bond and to move up the trial date by one month to avoid speedy trial problems.  (Doc. No. 5-1, Ex. 3.)  On April 7, 2020, the trial court continued the jury trial due to the health emergency caused by COVID-19.  (Doc. No. 5-1, Ex. 5.)   The trial court based the continuance on the Ohio Governor's restrictions on public gatherings, the Center for Disease Control's nationwide guidance, Attorney General Yost's Opinion 2020-002, and the Supreme Court Entry of March 27, 2020.  (*Id.*)

On June 1, 2020, Kirks filed a motion to dismiss on statutory speedy trial grounds.  (Doc. No. 5-1, Ex. 6.)  On June 17, 2020, the trial court held a hearing on his motion.  (Doc. No. 5-2 at 9-17.)  On July 2, 2020, the trial court denied Kirks' motion to dismiss as premature.  (Doc. No. 5-1, Ex. 7.)

On July 16, 2020, Kirks filed a motion for a continuance to allow defense counsel additional time to prepare for trial.  (Doc. No. 5-1, Ex. 8.)  The trial court granted the continuance, rescheduling the trial for August 18, 2020.  (Doc. No. 5-1, Ex. 9-10.)  The trial court explained that the case could not be heard sooner due to the backlog of cases held up by COVID-19 where defendants were incarcerated, arraigned before the present matter, and those which had been set multiple times.  (Doc. No. 5-1, Ex. 10.)

The case proceeded to jury trial on August 18, 2020.  (Doc. No. 5-2 at 19.)  On August 19, 2020, the jury returned its verdict, finding Kirks guilty of all charges.  (Doc. No. 5-3 at 203-12.)

On August 24, 2020, the court sentenced Kirks to 36 months in prison on Counts 1-8 and 12 months in prison on Counts 9-17, with the sentences imposed on Counts 1, 5, 9, 13, and 17 to run consecutively, for an aggregate prison term of nine years.  (Doc. No. 5-1, Ex. 11.)

## B.    Direct Appeal

On September 18, 2020, Kirks, through counsel, filed a timely notice of appeal to the Fifth District Court of Appeals.  (Doc. No.  5-1, Ex. 12.)  In his appellate brief, Kirks raised the following assignments of error:

I.      Appellant's Constitutional and Statutory right to a speedy trial were violated.

II.     The State failed to present sufficient evidence to sustain convictions on all counts.

III.    Appellant's convictions on all counts are against the manifest weight of the evidence presented, and must be reversed.

IV.    The trial court erred when it denied Appellant's motion for judgment of acquittal.

V.     The trial court erred in imposing consecutive sentences.

VI.    The trial court erred when it imposed fines upon Appellant who was indigent.

(Doc. No. 5-1, Ex. 13.)

On February 8, 2021, Kirks moved for leave to amend his merit brief with additional argument concerning the statutory speedy trial issue and attached the amendment to his motion.  (Doc. No. 5-1, Ex. 17.)  On February 22, 2021, over the state's objection, the state appellate court granted Kirks' motion and ordered him to file one complete brief.  (Doc. No. 5-1, Ex. 18.)  Kirks again filed the amended portion of his brief.  (Doc. No. 5-1, Ex. 19.)  The State filed a responsive brief (Doc. No. 5-1, Ex. 20), to which Kirks replied.  (Doc. No. 5-1, Ex. 21.)

On June 16, 2021, the state appellate court affirmed Kirks' convictions.  (Doc. No. 5-1, Ex. 22.) *See also State v. Kirks*, 2021-Ohio-2027, 2021 WL 2456641, at *8.

On July 19, 2021, Kirks, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 5-1, Ex. 23.)  In his Memorandum in Support of Jurisdiction, Kirks raised the following Propositions of Law:

> I.  WHETHER PETITIONER'S CONSTITUTIONAL AND STATUTORY RIGHT TO A SPEEDY TRIAL WERE VIOLATED?
>
> II.  WHETHER PETITIONER'S CONVICTIONS ARE SUPPORTED BY SUFFICIENT EVIDENCE?
>
> III.  WHETHER PETITIONER'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND REQUIRE REVERSAL?
>
> IV.  WHETHER THE TRIAL COURT'S DENIAL OF PETITIONER'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL, DEPRIVED HIM OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS OF LAW UNDER BOTH THE FEDERAL AND STATE CONSTITUTIONS?
>
> V.  WHETHER THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES?
>
> VI.  WHETHER THE TRIAL COURT ERRED IN IMPOSING FINES UPON PETITIONER WHO IS INDIGENT?

(Doc. No. 5-1, Ex. 24.)  The State filed a response.  (Doc. No. 5-1, Ex. 25.)

On September 14, 2021, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 5-1, Ex. 26.)

## C.    Post-Conviction Filings

Meanwhile, on November 2, 2020, Kirks, *pro se,* moved the trial court for additional jail-time credit. (Doc. No. 5-1, Ex. 27.) On November 6, 2020, the trial court credited Kirks with an additional 62 days of jail time.  (Doc. No. 5-1, Ex. 28.)

On November 30, 2020, Kirks again moved for additional jail-time credit.  (Doc. No. 5-1, Ex. 29.) On December 15, 2020, the trial court overruled Kirks' motion.  (Doc. No. 5-1, Ex. 30.)

On January 11, 2021, Kirks, *pro se*, appealed to the Fifth District Court of Appeals.[1]  (Doc. No. 5-1, Ex. 31.)  He raised the following assignment of error:

> I.   The trial court erred by miscalculating and denying Appellant's request for additional jail-time credit for time that he served arising out of the offenses for which he was convicted and sentenced.

(Doc. No. 5-1, Ex. 34.)   The State filed a brief in response.  (Doc. No. 5-1, Ex. 35.)

On September 14, 2021, the Court of Appeals reversed and remanded the case to the trial court. (Doc. No. 5-1, Ex. 36.)   The state appellate court acknowledged the state had conceded that Kirks was entitled to 110 days jail time credit, but not the 115 days requested by Kirks.  (*Id.*)

On September 30, 2021, the trial court ordered an additional five days of jail time credit for a total of 110 days.  (Doc. No. 5-1, Ex. 37.)

On September 24, 2021, Kirks moved for reconsideration of the state appellate court's September 14, 2021 decision concerning jail-time credit. (Doc. No. 5-1, Ex. 38.)   The State filed a response in opposition to Kirks' motion for reconsideration.  (Doc. No. 5-1, Ex. 39.)  On October 7, 2021, the state appellate court denied Kirks' motion for reconsideration.  (Doc. No. 5-1, Ex. 40.)

On October 29, 2021, Kirks, *pro se*, filed an appeal of the jail-time credit issue with the Ohio Supreme Court.  (Doc. No. 5-1, Ex. 41.)  In his Memorandum in Support of Jurisdiction, Kirks asserted the following proposition of law:

> I.   THE COURT OF APPEALS ERRED BY NOT REDUCING APPELLANT'S PRISON TERM BY THE *TOTAL* NUMBER OF DAYS THAT APPELLANT WAS CONFINED FOR ANY REASON ARISING OUT OF THE OFFENSE FOR WHICH HE WAS CONVICTED AND SENTENCED, AS R.C. 2967.191 REQUIRES.

---

[1] Kirks moved to consolidate his appeals (Doc. No. 5-1, Ex. 32), which the appellate court denied. (Doc. No. 5-1, Ex. 33.)

(Doc. No. 5-1, Ex. 42) (emphasis in original).  The State filed a memorandum in opposition to jurisdiction.  (Doc. No. 5-1, Ex. 43.)

On December 28, 2021, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 5-1, Ex. 44.)

**D.   Federal Habeas Petition**

On September 7, 2022, Kirks, through counsel, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:  Denial of the right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.
>
> **Supporting Facts**:  See attached.
>
> **GROUND TWO**:  The conviction was based on legally insufficient evidence which resulted in a violation of Petitioner's right to due process.
>
> **Supporting Facts**:  See attached.

(Doc. No. 1.)

On November 14, 2022, Warden Douglas Fender ("Respondent") filed the Return of Writ. (Doc. No. 5.)  Kirks filed a Traverse on February 13, 2023.  (Doc. No. 7.)

### III. Exhaustion and Procedural Default

**A.   Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence

11

of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

## B.    Application to Petitioner

Respondent argues that Kirks' constitutional speedy trial claim is procedurally defaulted, as he failed to raise that violation at the trial court level, and the state appellate court enforced Ohio's contemporaneous objection rule, which constitutes an adequate and independent state procedural bar that may be relied upon as grounds for rejecting a claim of error. (Doc. No. 5 at 20-21.) Respondent asserts that Kirks cannot claim ineffective assistance of trial counsel as cause to excuse the procedural default as he failed to raise that record-based claim on direct appeal. (*Id.* at 21-22.)

Kirks responds that the state court of appeals' analysis "ignore[d] the availability of the plain-error doctrine," and maintains that his arguments satisfy the requirements for plain error. (Doc. No. 7 at 6-7.) In addition, Kirks argues that the lack of an objection at the trial court level "did not preclude analysis";

the state appellate court reviewed Kirks' arguments and affirmed his convictions.  (*Id.*)  Therefore, Kirks asserts he "properly raised and exhausted his claims and is, therefore, not barred from seeking relief." (*Id.*)

After addressing and rejecting Kirks' statutory speedy trial claim, the state appellate court found as follows: "Appellant also argues that his constitutional speedy trial rights were violated. However, at no point during the hearing before the trial court or in his motion before the trial court did appellant allege that his constitutional speedy trial rights were violated. Therefore, any argument with regard to the constitutional, rather than statutory, violation of his pretrial rights, is waived on appeal. See *State v. Pyle*, 5th District Coshocton No 04 CA 12, 2004-Ohio-6201, ¶ 22."  *State v. Kirks*, 2021-Ohio-2027, 2021 WL 2456641, at *4.

In Ohio, a petitioner waives an alleged error when he fails to make a contemporaneous objection. *Osborne v. Ohio*, 495 U.S. 103, 124, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (recognizing Ohio's long-standing contemporaneous objection rule).  The Sixth Circuit has held that Ohio's "contemporaneous objection rule is an adequate and independent state ground barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and that plain-error review is not inconsistent with the procedural default."  *Awkal v. Mitchell*, 613 F.3d 629, 648–649 (6th Cir.2010) (citing *Lundgren*, 440 F.3d at 765); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.2001). "The state court's plain error review did not constitute a waiver of the procedural default."  *Mason v. Brunsman*, 483 F. App'x 122, 130–31 (6th Cir. 2012).  *See also Shafer v. Wilson*, 364 F. App'x 940, 945 (6th Cir. 2010) (finding the State of Ohio expressly enforced its contemporaneous objection rule where "the last state court to render a reasoned opinion in this case, the Ohio Court of Appeals on direct appeal, noted the failure to object, applied plain-error review, and denied [appellant's] claims for relief.")

13

As the state appellate court correctly noted, Kirks did not raise a constitutional speedy trial claim to the trial court.  Accordingly, the first three elements of *Maupin* test are satisfied as Kirks failed to comply with the contemporaneous objection rule, the state appellate court actually enforced the rule, and the rule constitutes an "independent and adequate" state ground on which the state can foreclose federal review.  Kirks cites no authority to show that the state appellate court's failure to engage in a plain error analysis excuses any procedural default.  Moreover, even had the state appellate court engaged in plain error review, as set forth above, it would not waive the procedural default.  As such, the Court finds Ground One is procedurally defaulted.

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.)  As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin*, 434 F.3d at 417 (quoting *Carrier*, 477 U.S. at 488.  Here, Kirks has neither presented any cause for his default nor has he alleged ensuing prejudice or a manifest miscarriage of justice.  In addition, Kirks has not presented a credible claim of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Ground One be dismissed as procedurally defaulted.

## IV. Review on the Merits

### A.     Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v.Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal

15

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

16

1.      **Ground Two**

In his second claim for relief, Kirks argues his convictions were "based on legally insufficient evidence which resulted in a violation of Petitioner's right to due process."  (Doc. No. 1 at 8.)  Kirks maintains the prosecution "failed to establish that [he] acted with either a purpose to defraud or that he acted knowingly," and therefore "failed to establish each and every element beyond a reasonable doubt as it relates to the Counterfeiting convictions."  (Doc. No. 1-2 at 7.)  Kirks asserts the prosecution also "failed to present sufficient evidence to establish each and every element of Forgery as there was insufficient evidence presented to establish that any conduct had been committed knowingly."  (*Id.*)

Respondent argues that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of counterfeiting and forgery beyond a reasonable doubt.  (Doc. No. 5 at 30.)  Therefore, Kirks fails to demonstrate that the state appellate court decision "rejecting his sufficiency of evidence claim involved an unreasonable determination of the facts or an unreasonable application of *Jackson*," and therefore Ground Two is meritless.  (*Id.* at 31.)

In his Traverse, Kirks challenges the state appellate court's analysis as it "relied upon [his] admission that he knew that Adrian Berry sometimes successfully altered cards," but "[k]nowledge that another individual has been known to alter cards [] is not the same as knowledge that the cards [he] had were, in fact, altered."  (Doc. No. 7 at 13-14.)  Kirks also argues the prosecution "presented no evidence establishing that [he] had actually knowingly purchased altered tickets with a purpose to defraud."  (*Id.* at 14.)

Kirks raised a sufficiency of the evidence claim to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 5-2, Ex. 13, 24.)  The state appellate court considered this claim on the merits and rejected it as follows:

{¶34} Appellant, in his second and third assignments of error, contends that his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶35} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶36} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶37} Appellant was convicted of counterfeiting in violation of R.C. 2913.30(B)(4) and forgery in violation of R.C. 2913.31(A). R.C. 2913.30 states, in relevant part, as follows:

{¶38} (B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:

{¶39} (1) Falsely make, forge, counterfeit, or alter any obligation or other security of the United;

{¶40} (4) Without authorization of the issuer, falsely make, forge, counterfeit, alter, or knowingly possess any access device.

{¶41} "Access device" is defined as meaning "any debit or credit card representing a monetary security or retail amount by any financial institution, including a bank, savings bank, savings and loan association, credit union, or business entity. R.C. 2913.30.

{¶42} In turn, R.C. 2913.31 states, in relevant part, as follows:

{¶43} (A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:

{¶44} (2) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.

18

{¶45} R.C. 2901.22 provides that "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."

{¶46} In the case sub judice, there was testimony that appellant told Special Agent McLaughlin that he had paid Adrian Berry $300.00 to buy fraudulently purchased tickets and 16 cards found in his possession. The tickets alone had a retail value of over $1,000.00. While appellant claimed that Berry left the cards in appellant's car without his knowledge, the jury, as trier of fact, was in the best position to assess his credibility. Appellant testified that he went to the Ohio State Reformatory with Berry but failed to tell Special Agent McLaughlin this. Agent McLaughlin testified that appellant told him that he thought that Berry was making altered credit cards. Appellant knew that Berry used his laptop computer to alter the information on the cards and admitted that he tried, sometimes successfully sometimes not, to use the cards to make purchases at restaurants.

{¶47} We find that, as noted by appellee, when presented with the fact that appellant knew that Berry made altered cards and with appellant's decision to buy 16 cards from him, a jury could reasonably infer that appellant bought the cards knowing them to be fraudulent with purpose to use them.

{¶48} As is stated above, appellant bought the tickets and 16 credit cards for total of $300.00. The tickets alone had a retail value of over $1,000.00. There was evidence that appellant was trying to sell the tickets to other people knowing that they had been forged and knowing that they had been purchased in an unlawful scheme. The tickets were purchased by Jim Simfenderfer. Appellant possessed the tickets with intent to deliver them.

{¶49} We find that, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant committed the offenses of counterfeiting and forgery and that the jury did not lose its way in convicting appellant of such offenses.

{¶50} Appellant's second and third assignments of error are, therefore, overruled.

*State v. Kirks*, 2021-Ohio-2027, 2021 WL 2456641, at **4-6.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The

19

standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *Id.  See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782, at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70.)  *See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v.*

*Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined Kirks' convictions were supported by sufficient evidence. In resolving Kirks' sufficiency of the evidence claim, the state appellate court accurately summarized the evidence and correctly identified the applicable law. As the state appellate court noted, Kirks admitted to Special Agent McLaughlin that he paid Adrian Berry $300 to buy the tickets and access cards found in his possession. (Doc. No. 5-3 at 68, 88-90.) While at trial Kirks denied that the $300 included payment for the access cards and that Berry had left the access cards in Kirks' car without Kirks' knowledge (*id.* at 108, 116-18, 143-46), his initial report to Special Agent McLaughlin was that the $300 was payment for the tickets and the cards, and he he did not tell Special Agent McLaughlin that he went to the Ohio State Reformatory with Berry or that Berry left the cards in Kirks' car without Kirks' knowledge. (*Id.* at 134-39, 148-50.) There was testimony that most of the access cards were found in the driver's side door, the center console, or in a small ashtray above the gear shift, although there were a couple laying on the passenger seat underneath some paperwork. (*Id.* at 13, 19.) The cards on the passenger seat were visible. (*Id.* at 19.) The access cards were found near Kirks' identification and his legitimate credit card. (*Id.* at 26.) Special Agent McLaughlin testified that Kirks told him he thought Berry was making altered access devices. (*Id.* at 70-71.) Kirks admitted to trying to use these cards at several business, and while he was successful at some, he was unsuccessful at others. (*Id.* at 69, 79-80.) At trial, Kirks denied using the specific access devices in his car at various places. (*Id.* at 120.)

Regarding the tickets, they had a retail value of over $1,000 and were purchased by Jim Simfenderfer (*id.* at 31, 69), who had reported his credit card stolen. (*Id.* at 33.) The tickets were bought using five separate credit cards from different people in five different states, and a couple of the purchases were for large amounts. (Doc. No. 5-2 at 208; Doc. No. 5-3 at 30-31.) Kirks told the initial responding officer the reason he had so many tickets was that he was supposed to have a number of family members come down from Cleveland and go through the haunted prison together, but they all canceled, so he was trying to sell the tickets to get his money back. (Doc. No. 5-2 at 195-96, 201.) Kirks later told other officers that he got the tickets from a person at a BP station who told him to sell them or give them away. (*Id.* at 207, 216.) Kirks admitted to trying to sell the tickets and that Berry told him he could double his money. (Doc. No. 5-3 at 107, 110.)

It is not for this Court to weigh evidence or determine credibility. *See Jackson*, 443 U.S. at 317-19; *Coleman*, 566 U.S. at 651. While Kirks interprets evidence in a light most favorable to him, that is not the standard – the Court must view the evidence in a light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.

Under the "doubly deferential" standard, the Court cannot say the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Brown v. Konteh*, 567 F.3d at 205. Accordingly, it is recommended the Court find Ground Two lacks merit.

### V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.


Date: March 2, 2023          *s/ Jonathan Greenberg*
                                         Jonathan D. Greenberg
                                         United States Magistrate Judge

**<u>OBJECTIONS</u>**

  Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).